NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued February 17, 2011
Decided July 21, 2011

### Before

FRANK H. EASTERBROOK, *Chief Judge*

KENNETH F. RIPPLE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| Nos. 10-2569 & 10-2932 | |
| EDDIE HARDWICK,<br>  *Plaintiff-Appellant*, | Appeals from the United States District Court for the Central District of Illinois. |
| *v.* | |
| SUNBELT RENTALS, INC., and INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 965,<br>  *Defendant-Appellee*. | No. 09-1106<br>Joe Billy McDade, *Judge*. |

### Order

A collective-bargaining agreement between Sunbelt Rentals and Local 965 of the Operating Engineers Union provided that if Sunbelt opened new outlets within the Local's jurisdiction, "any displaced bargaining unit employee from Decatur who is not on suspension or probation will be offered a lateral position at the new facility." In January 2008 Sunbelt told employees that the Decatur facility would close soon. It offered Eddie Hardwick a transfer to East Peoria; he declined. The Union told its members that it expected Sunbelt to open a new facility in Springfield, Illinois, and that they would be eligible for transfer. It advised them not to resign but to await layoff in February. (Anyone who resigned would not be "displaced" by Sunbelt.) Hardwick resigned in late January 2008, telling Sunbelt that he was quitting because it had not offered him a transfer to Champaign.

In February 2008 Sunbelt laid off the workers at Decatur who had not accepted a transfer. It opened a new facility in Springfield in summer (the parties dispute whether the month was July or August; it does not matter who is right), and the Union asked an arbitrator to decide whether the laid-off workers from Decatur were eligible for positions there. The arbitrator's decision provides in part:

> The employer is to offer lateral transfers to its Springfield facility to those employees within the bargaining unit at the time of its January 11, 2008 announcement of the Decatur center's closing. Further, to the extent that any of those employees suffered loss of wages as a result of its failure to do so, those employees shall be entitled to back pay.

Neither the Union nor Sunbelt asked a court to enforce or set aside this award. They implemented it amicably. But Hardwick is dissatisfied, for he was left out.

Hardwick believes that he is entitled to both a transfer and back pay, because he was an employee at Decatur on January 11, 2008. Sunbelt and the Union concede that this is a linguistically possible reading of the award but doubt that it is the best reading; the arbitrator did not discuss the effects of Hardwick's resignation. It is not simply that a person who quit before being laid off is no longer in the bargaining unit and cannot have been "displaced" by the layoff (a condition of transfer under the CBA's language), but also that any wages that Hardwick lost could not have been "as a result of" Sunbelt's failure to offer him a transfer to Springfield. Anything that Hardwick lost was the result of the fact that he quit to pursue a new opportunity, not of the fact that he was offered a transfer to East Peoria rather than Champaign. (Hardwick quit in order to train for work in Iraq but later he gave up that plan. That's why he was eager to have his old job back.)

Local 965 told Hardwick that it did not think him entitled to relief under the arbitrator's award. He asked the Union to seek an accommodation from Sunbelt nonetheless, and the Union did. Sunbelt offered to employ Hardwick at Springfield without back pay; as an alternative, it offered to pay Hardwick $3,500 in exchange for a release of any future employment opportunity. Hardwick turned down the financial offer. He contends that he was told that the amount was $300 rather than $3,500. He also maintains that the Union never told him about the option of employment without back pay. The district court did not decide exactly what the Union said (it relayed Sunbelt's position orally rather than in writing), so we must accept Hardwick's version of events. Hardwick sent the Union a letter saying that he rejected all "options" presented to him and demanded employment at Springfield, plus back pay. The Union replied, explaining that it would be hard to get back pay because Hardwick had quit, despite being instructed not to do so, and therefore had not been "displaced" by the layoff at Decatur. The Union followed up its letter with a meeting between Hardwick (and his wife) and the Local's business agent. During the discussion Hardwick repeated his demand for a job at Springfield plus back pay.

Officials of the Local took the subject to the Union's Executive Board, which reviewed the CBA, the arbitrator's award, Hardwick's letter resigning his position at Sunbelt, and other correspondence. With officers of Local 965 recusing themselves, the Executive Board concluded that the award does not entitle Hardwick to back pay, and it voted not to seek judicial relief on his behalf. The business agent sent Hardwick a letter communicating this decision and the reasons for it—principally that, by quitting before the Decatur facility closed, Hardwick had removed himself from the group of employees eligible for a transfer to Springfield.

A month later, the Union offered Hardwick a compromise: it would file suit in an attempt to obtain Hardwick both a job at Springfield and back pay, if Hardwick would agree to pay the Union's costs and legal fees should the suit prove unsuccessful. The Union thought that a suit would be unlikely to prevail, and it did not want to spend other employees' dues on a low-probability quest for relief that could benefit only one worker. If the Union won, as Hardwick had been insisting it was bound to do, he would have a job in Springfield, with back pay, and would not owe a penny for costs or legal fees. Hardwick declined this offer; he insisted that he was entitled to employment and back pay without bearing any financial risk. At this point negotiations ended.

Hardwick then filed this suit—thus incurring with certainty the legal expenses that he had earlier refused to accept any risk of. The suit also imposed legal expenses on Local 965, and thus on his former co-workers. And Hardwick came away with nothing for his troubles. The district court granted summary judgment for Sunbelt and the Union. 719 F. Supp. 2d 994 (C.D. Ill. 2010).

Hardwick's complaint and other filings in the district court asked the judge to "enforce" the arbitrator's award and order Sunbelt to provide him the relief that Hardwick thought the arbitrator had afforded him. The district judge replied that employees cannot move to enforce awards in labor arbitration. Employees are not parties to CBAs or arbitrations under them; only unions and employers are parties, and therefore only unions or employers may ask a court to enforce (or set aside) such awards. An employee may obtain relief only in a hybrid action against both union and employer—an action in which, to prevail, the employee must show both that the union violated its duty of fair representation and that the employer violated the CBA. The district court's comprehensive opinion covers the legal principles. See 719 F. Supp. 2d at 1003–05. It is unnecessary to repeat the discussion in this order.

Hardwick failed to persuade the district court on both fronts. Sunbelt did not violate the CBA because it offered Hardwick a transfer to East Peoria and offered him a job at Springfield even after he resigned. (Hardwick disputes whether the latter offer was passed on to him by the Union, but there is no doubt that Sunbelt *made* the offer and therefore cannot have violated the CBA.) If the arbitrator's award required Sunbelt to offer Hardwick a job at Springfield, this does Hardwick no good, because Sunbelt complied. The arbitrator's requirement of back pay was limited to "those employees [who]

suffered loss of wages as a result of its failure" to offer jobs at Springfield. Hardwick did not suffer lost wages for this reason; his loss was attributable to the fact that he quit his job at Decatur yet failed to obtain alternative employment.

Because Sunbelt did not violate its obligations under the collective bargaining agreement, Hardwick would not be entitled to relief even if the Union violated its duty of fair representation. The district judge held, at all events, that the Union did not. 719 F. Supp. 2d at 1005–14. Violation of the DFR can be shown by action that is "arbitrary, discriminatory, or in bad faith". *Air Line Pilots Association v. O'Neill*, 499 U.S. 65, 71 (1991). This is a substantially higher hurdle than proof of negligence or "union malpractice." And, as the district court stressed, a union does not automatically violate its duty of fair representation by settling a grievance with the employer or deciding not to enforce an arbitrator's award. A union may prefer harmonious labor relations—which benefit all workers—even if this means that some employees do not receive the highest possible personal benefits. Again these subjects are well covered in the district court's opinion, and we need not repeat its analysis.

Hardwick has all but abandoned the contentions presented to the district court. Instead he maintains that the Union violated its DFR by not discussing the issues with him more frequently, and in more detail, and by not mentioning Sunbelt's offer of reinstatement without back pay. Yet as even our brief summary shows, the Union met and corresponded with Hardwick frequently; it did not abandon him. (The district court's opinion contains more details, which we have omitted.) The Union obtained concessions from Sunbelt; Hardwick rejected them. The Union offered Hardwick a compromise about an effort to seek judicial relief under the arbitrator's award; Hardwick rejected that too. The problem was not lack of communication but intransigence: Hardwick repeatedly said that he would accept nothing less than a job in Springfield, with back pay, and without any risk. It is hard to see how omission of the job-but-no-back-pay offer (if the Union did neglect to relay this offer) could have harmed Hardwick.

More than that: as the district judge explained, federal labor law does not require unions to negotiate with their own members. Unions negotiate with employers *on behalf of* their members. The members' influence comes through their right to approve CBAs and elect officers. Once elected, the officers may act on behalf of each member, and the membership as a whole. Hardwick has not cited any authority for the proposition that officers of a local union must meet with each member personally and explain every offer the employer made. Perhaps officers who want to be reelected will do this; perhaps not. This is a matter for internal union democracy, not legal obligation. The district court did not err in concluding that the Union had honored its duty of fair representation—and, to repeat, Hardwick could not win even if the Union *had* violated its duty, because Sunbelt did not violate the CBA.

AFFIRMED